# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Brief August 15, 2000 Session

## STATE OF TENNESSEE v. MICHAEL E. WALLACE

**Appeal as of Right from the Criminal Court for Davidson County**
**No. 98-C-2021     Steve Dozier, Judge**

---

**No. M1999-02187-CCA-R3-CD - Filed March 1, 2001**

---

On August 25, 1998, a Davidson County Grand Jury indicted Michael E. Wallace, the defendant and appellant, of one count each of the following: possession of cocaine with intent to sell more than .5 grams of cocaine, simple possession of marijuana, possession of a weapon, possession of drug paraphernalia and evading arrest. Following a jury trial, the defendant was convicted for possession with intent to sell less than .5 grams of cocaine, a lesser included offense of count one. The defendant was also convicted of all other counts as charged. After a sentencing hearing, the trial court sentenced the defendant as a Range II, multiple offender, to serve ten years for possession of cocaine with intent to sell consecutively to two years for possession of a weapon. For the remaining counts, the court ordered the defendant to serve two eleven month and twenty-nine day sentences concurrently to each other and the other counts. On appeal, the defendant claims (1) that the evidence was insufficient to support his conviction; (2) that the trial court erroneously allowed a police officer to offer expert opinion testimony; (3) that the trial court erroneously denied the defendant's motion for a mistrial after a witness testified to prior bad acts of the defendant; (4) that the court erroneously refused to instruct the jury to consider lesser-included offenses; and (5) that the court erroneously ordered consecutive sentences. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOE G. RILEY, J., and L. T. LAFFERTY, SR. J., joined.

Sam E. Wallace, Jr., Nashville, Tennessee, for the appellant, Michael E. Wallace.

Paul G. Summers, Attorney General & Reporter and Elizabeth T. Ryan, Assistant Attorney General; Victor S. Johnson, District Attorney General and Jon Seaborg, Assistant District Attorney, for the appellee, State of Tennessee.

# OPINION

## Factual Background

On September 2, 1997, Metro Nashville Police Officers executed a search warrant at the defendant's residence. Several officers approached the side entrance to the residence, knocked on the door and announced their presence. When no one answered the door, the officers forcibly entered the home. Officer Leander Dupie was the first officer to enter the home, and he saw the defendant and his co-defendant, Alton Edmondson, run out the front door.

After the defendant ran out the front door, he jumped over a bush and ran into a tree. There, Officer Greg Adams, who was monitoring the front of the house with Officer Charles Williams, took the defendant into custody. Officer Adams searched the defendant and found a plastic bag containing $989.00 in cash. The bag contained bills of every denomination.

Inside the house, officers discovered a plastic bag containing several rocks of cocaine base later determined to weigh 18.1 grams, a bag containing cocaine powder later determined to weigh 13.7 grams and a bag containing marijuana later determined to weigh 4.0 grams, all on a coffee table in the living room. Police also discovered a twelve-gauge shotgun containing three shells, a thirty-eight caliber handgun, a twenty-two caliber handgun, a box of plastic bags, two electronic scales, and another plastic bag that contained $4,500.00 in cash, all in the living room. Police also found a police scanner, a glass beaker in the kitchen and a small amount of marijuana in the bedroom. Additionally, there was a Ford Bronco outside the residence that belonged to the defendant.

The defendant was indicted for possession of more than .5 grams of cocaine with intent to sell, simple possession of marijuana, possession of a weapon, possession of drug paraphernalia and evading arrest. The defendant was convicted on all counts as charged with the exception of the first count, for which the defendant was convicted of possession of less than .5 grams of cocaine with intent to sell, a lesser included offense. Following a subsequent sentencing hearing, the trial court sentenced the defendant as a Range II, multiple offender to serve ten years for possession for resale consecutively to two years for possession of a weapon. The court also ordered the defendant to serve eleven months and twenty-nine days for simple possession and eleven months and twenty-nine days for possession of paraphernalia. The court ordered the latter two charges to be served concurrently to each other and to the former two charges, for an effective twelve-year sentence.[1]

## Sufficiency

First, the defendant claims that the evidence was insufficient to support his convictions. We disagree. On appeal, the proper inquiry for determining the sufficiency of the evidence to support a conviction, is whether, considering the evidence in a light most favorable to the State, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999); State v. Cazes, 875 S.W.2d 253, 259-60 (Tenn.

---

[1]Although the jury also convicted the defendant of evading arrest, the record does not contain a judgment for that offense nor does the sentencing hearing transcript reflect the sentence imposed for that charge.

1994). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court does not reweigh or reevaluate the evidence. Id. Therefore, on appeal, the State is entitled to the strongest legitimate view of the trial evidence and all reasonable and legitimate inferences which may be drawn therefrom. Hall, 8 S.W.3d at 599.

The defendant complains that the evidence does not support the inference that he either actually or constructively possessed the drugs, guns, or paraphernalia. See Tenn. Code Ann. §§ 39-17-417, -418, -425, -1307. As this Court has previously remarked,

> Possession of a controlled substance can be based on either actual or constructive possession. The state may establish constructive possession by demonstrating that the defendant has the power and intention to exercise dominion and control over the controlled substance either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession.

State v. Brown, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995)(internal citations omitted). However, as the defendant correctly notes,"[t]he mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987).

In this case, the defendant was more than merely present in the house where the drugs, guns and paraphernalia were found; he lived there. The defendant's former girlfriend testified that the defendant lived at the residence at the time of the arrest, and police found mail addressed to the defendant and the defendant's Bronco at the residence. The fact that the defendant lived at the address, coupled with the type and quantity of evidence found, was sufficient to support a jury verdict that the defendant possessed the drugs, guns and drug paraphernalia. Compare Brown, 915 S.W.2d at 8, (holding that defendant's ownership of vehicle supported inference that defendant possessed drugs found in vehicle), with State v. Transou, 928 S.W.2d 949, 956 (Tenn. Crim. App. 1996)(holding that the evidence did not establish constructive possession where defendants did not reside in the apartment); see also State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)(holding that defendants who were both on premises and in same areas where cocaine and drug paraphernalia were found constructively possessed such cocaine and drug paraphernalia).

This issue is without merit.

### Lay Opinion Testimony

Next, the defendant argues that the trial court improperly allowed Lieutenant Melvin Brown of the Metro Nashville Police Department to testify as to his opinions about the quantities of the seized drugs. Lieutenant Brown participated in the search of the defendant's residence, and at trial the State attempted to qualify Lieutenant Brown as "an expert in the area of drug sales and drug crimes." After the defendant voir dired Lieutenant Brown briefly, however, the court held as follows:

I don't think it is necessary that Lieutenant Brown have to be declared an expert, for him to give his opinion about various items as they pertain to this particular case. I mean his – his testimony can be weighed by the jury, just like any other witness; and his experience, that he's already testified to, can be weighed and given what weight the jury deems appropriate. But I don't think it's necessary for him to answer questions about his experience that he be declared an expert.

Lieutenant Brown proceeded to testify about the execution of the search warrant in this case. During his testimony, the following colloquy occurred

ASSISTANT DISTRICT ATTORNEY GENERAL LAISNEZ: Okay. Now you mentioned all together there was about how many grams of cocaine found, all together?

LIEUTENANT BROWN: Of all together, it's a little over thirty, according to the T.B.I. Lab report. The – what we weighed at the scene was – is more than there actually was, because we weigh what it's in, because we don't want to dump it out. And then they weigh – they take it out of what it – what it's in and weigh it, just the drugs, just – just the substance. So it's about thirty-one grams or something like that.

Q: Okay. And is that the amount that the lab came back with, thirty-one grams or so?

A: Yeah, something – a little over that.

Q: Okay. Now, Lieutenant, what's the significance of thirty-one grams, based on your experience?

A: Well, it's been my experience – that – that's more than an ounce. It's – it's been my experience, in a couple of hundred crack houses, we seldom get more than a thousand dollars, and we very seldom get more than an ounce of dope. An ounce of cocaine is the –

DEFENSE ATTORNEY WALLACE: Your Honor please, I – I object to what – whatever this has to do with any other arrests. That – that's just not relevant.

THE COURT: All right. I'll sustain the objection, in terms of the officer elaborating. I mean, if you want to ask him other questions, you can; so, go ahead.

GENERAL LAISNEZ: Do you consider thirty-one grams to be a lot of cocaine?

MR. WALLACE: Your Honor please, I object to that. That's up to the law, what the law says. I mean, it's --

THE COURT: Well --

MR. WALLACE: – a lot is illegal if the law says it is.

THE COURT: I'll overrule the objection. He can testify that – in terms of his experience. The jury can weigh and consider that particular testimony. All right. Go ahead.

LIEUTENANT BROWN: In my experience, for a crack house operation, that – that it would be in the – probably in the top – of all that we – of all that we raid, that would be in the top five percent. But – but, quite frankly, if – if it was – as far as cocaine being brought in from out of state, not – that's not very much. As far as cocaine that's sold in upper levels, it's not very much. But, for a house in North or East Nashville operating as a cocaine distribution, selling at twenty dollars at a time, that is quite a bit.

Preliminarily, we note that although the defendant argues that the court improperly allowed the Lieutenant to testify as an expert, the record clearly indicates that the court refused to qualify Lieutenant Brown as an expert; thus, the question before this Court is whether Lieutenant Brown's testimony was outside the bounds of permissible lay opinion.

We conclude that it was not. Lay witnesses may give testimony in the form of an opinion where the testimony is "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Tenn. R. Evid. 701(a). The testimony is not objectionable merely because it embraces an ultimate issue before the jury. Tenn. R. Evid. 704. However, the admission of lay opinion testimony is limited to those situations where the jury could not readily draw its own conclusions on the ultimate issue, without the aid of the witness's opinion testimony. Blackburn v. Murphy, 737 S.W.2d 529, 533 (Tenn. 1987). In other words, the lay witness may express an opinion to describe her observations if that is the only way in which she can effectively communicate her observations to the jury. State v. Brown, 836 S.W.2d 530, 550 (Tenn. 1992). When the admission or exclusion of evidence is challenged on appeal, it is reviewable only for abuse of discretion. State v. Gray, 960 S.W.2d 598, 606 (Tenn. Crim. App. 1997).

First, Lieutenant Brown's characterization of the amount of cocaine was rationally based on his perception of the cocaine; indeed, he was present when it was seized, and he based his comparison on other crack houses that he had raided. Second, Lieutenant Brown's testimony that thirty-one grams of cocaine was a large amount compared to an average crack house was helpful to a clear understanding of his testimony, because it is unlikely that testimony that the officers seized "thirty-one grams of cocaine" would allow the jury to assess whether the defendant intended to sell the cocaine unless the jury also understood that the amount of cocaine was large and unlikely for personal use only. Testimony that the cocaine seized was a sizable quantity, as opposed to merely testifying to its exact weight, is exactly the type of opinion testimony that Rule 701 envisions.

The defendant also claims that the probative value of the lay opinion testimony was substantially outweighed by the danger of unfair prejudice. See Tenn. R. Evid. 403. We disagree. While the defendant may have suffered prejudice, the prejudice did not substantially outweigh the probative value of the testimony, because the amount of cocaine was relevant to prove the defendant's intent. See Tenn. Code Ann. § 39-17-417(a)(4); see also State v. Holt, 691 S.W.2d 520, 522 (Tenn. 1984). The trial court did not abuse its discretion. In any event any error in the admission of this testimony is clearly harmless given the fact that the jury convicted the defendant of felonious possession of a much smaller amount of cocaine than the proof showed he actually did possess.

This issue is without merit.

## **Mistrial**

Next, the defendant claims that the trial court erred by refusing to grant a mistrial after Teria Smith, the defendant's ex-girlfriend, testified about the defendant's prior bad acts. In a jury-out hearing, Ms. Smith offered to testify that, at the time of the arrest, the defendant lived at the residence in question and that she spent virtually every day with him. She also offered to testify that the defendant sold drugs from that location and that his codefendant, Mr. Edmondson, often assisted the defendant. Following the hearing, the court held that Ms. Smith could testify about the defendant's and Mr. Edmondson's presence at the house, but that she could not testify about the defendant's drug-related activities. When Ms. Smith testified on direct examination, the testimony was appropriately limited. However, on cross-examination, Ms. Smith testified, in response to a question, that the defendant had been "put out of another dope house." The defendant moved for a mistrial, arguing that the witness's testimony was in violation of the court's ruling.[2] The court denied the motion, holding that the witness's testimony did not create a "manifest necessity" for a mistrial. The court immediately instructed the jury to disregard the testimony.

The purpose of a mistrial is to correct the damage done to the judicial process when some event has occurred which would preclude an impartial verdict. Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). The decision whether to grant a mistrial is within the trial court's discretion and will not be disturbed absent an abuse of that discretion. State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). "Generally a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such by the trial judge." State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). We find that the trial court did not abuse its discretion here, especially given that the trial court took immediate steps to prevent undue prejudice to the defendant. See State v. Adkins, 786 S.W.2d 642, 644 (Tenn. 1990)(holding that a mistrial was not required following a witness's outburst where the trial court took immediate action to dispel prejudice); see also State v. Mathis, 969 S.W.2d 418, 422 (Tenn. Crim. App. 1997)(holding that "[i]n light of the limited nature of the offending testimony and the trial court's prompt curative instruction, the trial court did not abuse its discretion in refusing to grant a mistrial").

This issue is without merit.

---

[2]The defendant waited until after another witness had testified to move for a mistrial. Notwithstanding the state's claim that this was not a contemporaneous objection, see Tenn. R. App P. 36(a), we elect to consider the merits of the issue.

## Lesser Included Offenses

Next, the defendant claims that the trial court erroneously refused to instruct the jury to consider attempted possession as a lesser-included offense of each of the possession charges.[3] In State v. Burns, 6 S.W.3d 453 (Tenn.1999) the Tennessee Supreme Court concluded that an offense is a lesser-included offense of another if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged;  or
>
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>
> (1) a different mental state indicating a lesser kind of culpability;  and/or
>
> (2) a less serious harm or risk of harm to the same person, property or public interest;  or
>
> (c) it consists of
>
> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b);  or
>
> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition in part (a) or (b);  or
>
> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Id. at 466-67.  Under Burns, it is clear that attempt to possess drugs is a lesser-included offense of possession of drugs.

"This does not mean, however, that an instruction must be given simply because an offense is a lesser-included offense of another."  State v. Fowler, 23 S.W.3d 285, 288 (Tenn. 2000).  "First, the trial court must determine whether 'any evidence exists that reasonable minds could accept as to the lesser-included offense.'"  Id. at 289 (citing Burns, 6 S.W.3d at 469).  "Second, the trial court must determine whether the evidence viewed in this light is legally sufficient to support a conviction

---

[3] It is unclear whether the defendant argues that the court should have instructed the jury to consider attempt to possess as a lesser-included offense of all of the possession charges or merely the drug possession charges.  However, this ambiguity does not change our analysis.

for the lesser-included offense." Id. Although the defendant claims that the jury could have inferred that the defendant only went to the house to buy cocaine and was thus only guilty of attempting to possess it, the trial court correctly noted that there was absolutely no evidence that this is the case. Indeed the testimony established that the defendant lived at the residence where the cocaine was found and was in full possession of the contraband.

This issue is without merit.

## Sentencing

Following a sentencing hearing, the trial court found that the defendant was an offender whose record of criminal activity was extensive and accordingly sentenced the defendant as a multiple, Range II offender to serve ten years for the possession of cocaine with intent to sell consecutively to two years for possession of a weapon. The defendant now claims that the trial court improperly used statutory enhancement factors both to enhance the defendant's sentence and to impose consecutive sentences.

This Court's review of the sentence imposed by the trial court is de novo with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is de novo. State v. Poole, 945 S.W.2d 93, 96 (Tenn.1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required to consider the following factors in sentencing: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210.

In this case, the defendant only challenges the imposition of consecutive sentences. A trial court may order sentences to run consecutively if it finds that one or more of the statutory criteria exists by a preponderance of the evidence. Tenn. Code Ann. § 40-35-115(b). Under Tenn. Code Ann. § 40-35-115(b)(2), a trial court may impose consecutive sentences after determining that the defendant is an offender whose record of criminal activity is extensive. It is without question that the defendant had a record of extensive criminal activity. In addition to several felony and misdemeanor convictions, the defendant also reported using marijuana and cocaine since 1990. We hold that his record was clearly extensive within the meaning of the statute.

The defendant claims, however, that the trial court may not use criminal activity both to enhance a sentencing range and to support the imposition of consecutive sentences. This Court has specifically rejected that argument where, as in this case, the defendant's record is extensive beyond that necessary to establish the appropriate range. See State v. Holland, 860 S.W.2d 53, 62 (Tenn. Crim. App. 1993); see also, State v. Franklin, 919 S.W.2d 362, 366 (Tenn. Crim. App. 1995); State

v. Meeks, 867 S.W.2d 361, 377 (Tenn. Crim. App. 1993);  State v. Davis, 825 S.W.2d 109, 113 (Tenn. Crim. App. 1991).  This issue is without merit.

Accordingly, the judgment of the trial court is AFFIRMED.

 

_____

JERRY L. SMITH, JUDGE